**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**$20,193.39 U.S. CURRENCY; 14K Yellow Gold Rings 83 Un–Mounted 99.6 DWT; Numerous Other Pieces of Gold Jewelry & Precious Stones, Defendants,**

**and**

**Zareh Berberian, Claimant–Appellant.**

No. 92–56000.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 1, 1994.*

Decided Feb. 9, 1994.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

ers of one conspiracy count and 25 substantive counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A), for transactions involving approximately $30,000,000 from June 1988 through December 1988. On February 11, 1991, the United States filed this civil forfeiture action against $20,193.39 in U.S. currency and hundreds of pieces of gold jewelry.

Overt acts alleged in the conspiracy included the use of several Andonian businesses to facilitate money laundering. Such businesses included Andonian Brothers Manufacturing, Inc. (ABI) and VNA Gold Exchange (VNA). These businesses were directly involved in the laundering of more than $10,000,000 from June 1988 through December 1988. The currency and jewelry that are the subject of the present forfeiture action were seized from these two businesses.

Vahe Andonian, Nazareth Andonian, Silva Andonian, Hamesd Andonian, ABI, and VNA (the Andonian Claimants) filed claims and answers in this action on May 16, 1991. The Andonian Claimants withdrew their claims on or about May 13, 1991, thereby waiving any right to contest the forfeiture of the defendant items of property.

Zareh Berberian, a longtime friend of Vahe Andonian, also filed a claim and answer in this action. Between June 1988 and February 1989, Berberian made four $75,000 loans to Andonian. Each loan was evidenced by one or more cancelled checks and by an unnotarized promissory note.

The four promissory notes were identical except for the date. Each stated that "[s]hould this note be signed by more than one person, firm or corporation, all of the obligations herein contained shall be considered joint and several obligations of each signer hereof." Each note bore the signature "V. Andonian." None of the signatures indicated that Andonian was signing on behalf of an Andonian corporate entity.

In his answers to the government's interrogatories, Berberian admitted that Vahe Andonian was personally liable for each of the four $75,000 loans. Berberian offered the affidavit of one of the Andonians' attor-

Duncan T. Moran, Graysen & Kaplan, Los Angeles, California, for the claimant-appellant.

Marc A. Feldman, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: SNEED, THOMPSON, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Claimant Zareh Berberian appeals the district court's grant of summary judgment in favor of the United States in the government's civil forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A). The district court held that as an unsecured creditor, Berberian lacked standing to challenge the forfeiture of the defendant property. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.

I

In February 1989, a grand jury issued a 27–count indictment against Vahe Andonian, Nazareth Andonian, and eight others. A petit jury convicted the Andonians and oth-

neys to establish that the Andonians had no assets that could be used to repay him.

The United States moved for summary judgment on the ground that Berberian lacked standing to challenge the forfeiture action. The district court agreed with Berberian that a genuine issue of material fact remained as to whether he was a creditor of the Andonian businesses, or whether the loans were made to Vahe Andonian in his personal capacity. The court nevertheless held that even assuming Berberian was an unsecured creditor of ABI or VNA, he did not have standing. It therefore granted the government's summary judgment motion and struck Berberian's claim. The court then ordered the defendant property forfeited. This timely appeal followed.

## II

■ The present forfeiture action arises under 18 U.S.C. § 981(a)(1)(A), which applies to property involved in money laundering transactions. The statute provides that property shall not be forfeited "to the extent of the interest of an *owner* or *lienholder* by reason of any act or omission established by that owner or lienholder to have been committed without the knowledge of that owner or lienholder." *Id.* § 981(a)(2) (emphasis added). The claimant in a forfeiture action bears the burden of showing that he owns or has an interest in the forfeited property. *United States v. Lot 111–B, Tax Map Key 4–4–03–71(4)*, 902 F.2d 1443, 1444 (9th Cir. 1990) (per curiam). Standing is a threshold issue that we review de novo. *United States v. Lots 4 & 5, Block 4, Lakeview Dr.*, 976 F.2d 515, 520 (9th Cir.1992).

We agree with the district court that Berberian lacks standing to contest the forfeiture of the currency and jewelry. The plain language of § 981(a)(2) requires that the claimant be an owner or a lienholder of an interest in the forfeitable property. Berberian produced no evidence to show that he has a security interest in the assets of either ABI or VNA. At most, he is an unsecured creditor of the Andonian businesses.

■ Unlike secured creditors, general creditors cannot claim an interest in any particular asset that makes up the debtor's estate. For this reason, the federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property. *See, e.g., United States v. Four Million, Two Hundred Fifty–Five Thousand*, 762 F.2d 895, 907 (11th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986); *United States v. $47,875.00 in U.S. Currency*, 746 F.2d 291, 294 (5th Cir.1984); *United States v. $3,799.00 in U.S. Currency*, 684 F.2d 674, 678 (10th Cir.1982); *United States v. 127 Shares of Stock in Paradigm Mfg., Inc.*, 758 F.Supp. 581, 583 (E.D.Cal. 1990).

Berberian argues that the present case is distinguishable because there are no other Andonian assets available from which he can satisfy the debt he is owed. To support his position, he relies on *United States v. Reckmeyer*, 836 F.2d 200 (4th Cir.1987), and *United States v. Mageean*, 649 F.Supp. 820 (D.Nev.1986), *aff'd mem.*, 822 F.2d 62 (9th Cir.1987). Both cases held that unsecured creditors had standing under 21 U.S.C. § 853(n) to challenge an order of criminal forfeiture where the government had seized all known assets in the debtor/defendant's estate.[1] For several reasons, neither case persuades us that Berberian has standing.

First, *Reckmeyer* and *Mageean* were *criminal* forfeiture cases. Under § 853(n), once an order of forfeiture has been entered, any person asserting a legal interest in the forfeited property may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). The statute protects two categories of petitioners: those who have a legal interest in the property that is superior to the defendant's interest at the time of the commission of the acts giving rise to the forfeiture; and "bona fide purchasers for value" who purchase without knowledge of the forfeitability of the defendant's assets. *Id.*

1. *Mageean* involved the rights of unsecured creditors under 18 U.S.C. § 1963(m) (later redesig-
nated as § 1963(*l*)), a provision of the RICO statute that is virtually identical to § 853(n).

§ 853(n)(6).[2] The courts in *Reckmeyer* and *Mageean* held that unsecured creditors qualified as "bona fide purchasers for value" under the statute. *Reckmeyer,* 836 F.2d at 207–08; *Mageean,* 649 F.Supp. at 830–31. Berberian challenges the present forfeiture action under 18 U.S.C. § 981(a)(2), which does not list bona fide purchasers among the protected claimants.

█ In addition to different statutory language, criminal and civil forfeiture actions are also based on different legal principles. Both the *Reckmeyer* and *Mageean* courts emphasized that criminal forfeiture actions are *in personam* proceedings against the defendant. *Reckmeyer,* 836 F.2d at 207–08; *Mageean,* 649 F.Supp. at 823, 829. The legislative history of § 853(n) and its RICO counterpart reveals that Congress intended to provide a means by which third parties challenging the validity of a forfeiture order could have their claims adjudicated. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 207–08 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3390–91. By contrast, civil forfeiture actions are *in rem* proceedings against specific pieces of property.

Second, as the Fourth Circuit recognized in *Reckmeyer,* § 853(n) requires more than a legal interest in the debtor's estate; the petitioner must show that the interest exists in the specific property that is subject to forfeiture. *Reckmeyer,* 836 F.2d at 205. The court acknowledged that this hurdle may well prove fatal to the claims of many general creditors. *Id.* at 205–06. It explained:

Although general creditors can claim an interest in their debtors' estates, they cannot claim an interest in any particular asset that makes up that estate. That barrier has no impact here, however, because, as the government concedes, *the order of*

*forfeiture reaches all the discovered and undiscovered assets of [the defendant] and the government has seized all of his known assets.* In practical terms [defendant's] entire estate has been forfeited to the government. Because petitioners' interests necessarily lie within that estate, they meet the threshold qualification for relief by asserting a legal interest in the property subject to forfeiture.

*Id.* at 206 (emphasis added) (footnote omitted). Likewise, the forfeiture order in *Mageean* reached all of the defendant's assets. *See Mageean,* 649 F.Supp. at 821–22. The same cannot be said for the forfeiture order in the present case. Although Berberian alleges that there are no remaining Andonian assets, the order itself covers only the currency and jewelry listed in it. The evidence shows Berberian is neither an owner nor a lienholder of an interest in these specific items of property.

Finally, at least one court of appeals has called into question the reasoning of *Reckmeyer* and *Mageean.* In *United States v. Campos,* 859 F.2d 1233, 1237 (6th Cir.1988), the Sixth Circuit held that trade creditors were not bona fide purchasers for value within the meaning of § 853(n)(6)(B). The court further held that they did not have a "legal right, title, or interest" in the debtor's specific forfeited assets, as required under § 853(n)(6)(A). *Id.* at 1239–40. It therefore affirmed the district court's dismissal of the trade creditors' claims. *Id.* at 1240.

We therefore hold that as an unsecured creditor, Berberian lacks standing under § 981(a)(2) to contest the forfeiture of the defendant property. The district court properly granted summary judgment in favor of

---

2. Under § 853(n)(6), the court must amend an order of forfeiture if the petitioner demonstrates by a preponderance of the evidence that

  (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave

rise to the forfeiture of the property under this section; or

  (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to the order of forfeiture under this section.

The RICO statute at issue in *Mageean* protects the same two categories of petitioners. *See* 18 U.S.C. § 1963(*l*)(6).

348

the government and ordered Berberian's claim stricken.

AFFIRMED.